IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-120 |
| | ) | |
| RICARDO GLENN | ) | |

### UNITED STATES SENTENCING MEMORANDUM

### I.  INTRODUCTION

Thousands of our fellow citizens have died from fentanyl, heroin, and cocaine in recent years.  Their deaths are not products of natural disasters.  Neither microbes nor meteorological events are to blame.  Their deaths are the direct results of criminal choices of drug dealers, like Defendant Ricardo Glenn, who refuse to stop dealing drugs despite full knowledge of the carnage they are causing.

Mr. Glenn came to Butler County to deal fentanyl, heroin, and cocaine for Qureem Overton's Butler-based drug-trafficking crew.  Mr. Glenn then did so on a nearly daily basis for months in 2019 and 2020.  He was indicted, convicted, and is now pending sentencing for conspiring to distribute fentanyl, heroin, acetyl fentanyl, cocaine, and cocaine base.

### II.  GUIDELINE SENTENCE

The Sentencing Guidelines call for a sentence of between 57 and 71 months.  Such a sentence is not odd or excessive in Mr. Glenn's case.   Such a sentence is fully justified by what he did in Butler in 2019 and 2020 and what he did in Philadelphia over the course of several years before coming to Butler to deal drugs.  Mr. Glenn was, in fact, under court supervision, following a 2018 firearm conviction and county jail sentence in Philadelphia, when he was distributing fentanyl, heroin, and cocaine in Butler in 2019 and 2020.

Our society has the right to engage in self-defense against people who refuse to stop committing crimes. Incarceration is a necessary act of societal self-defense. It is one of civil society's earliest and most fundamental forms of social distancing.

There is absolutely no excuse for distributing substances that kill people and leave their families in misery. Even if the perpetually contradicted claims of "I was just dealing to support my family" or "I was just dealing to support my habit" were true, they would not come close to incrementally excusing such crimes. It is not acceptable to jeopardize the lives of others and risk placing other families in misery to supposedly support your habit or your family.

 Moreover, all drug dealing is dangerous and threatens to kill people and destroy families regardless of whether it is carried out with a friendly grin or a gun. It is illogical to treat non-violence as a mitigating factor when it comes to the distribution of substances that kill people. The presence of violence can make drug dealing worse, but the absence of violence does not make drug dealing any better – just like the absence of violence in the commission of environmental pollution crimes would not make them any better. Drug dealing is, at its core, pollution for profit. It should not make anyone feel better that the majority of the thousands of our fellow citizens who are killed each year by drug dealing die from "non-violent" drug dealing.

Mr. Glenn should receive a prison sentence within the guideline range of 57-71 months followed by a term of supervised release. In light of his timely acceptance of responsibility, the prosecution has no objection to a sentence at the bottom of the guideline range. In addition, an order should be entered directing the forfeiture of Mr. Glenn's interest in the $7,482.00 of drug-trafficking proceeds that were seized at the time and location of his arrest.

There is no good reason to vary from the guidelines in this case. Doing so would create an unjustified disparity between defendants who were convicted of committing similar crimes under

2

similar circumstances.  The United States Sentencing Guidelines are based on the principle that those who commit similar crimes under similar circumstances should receive similar sentences. *Hughes v. United States*, 138 S.Ct. 1765, 1774 (2018).  This principle promotes justice by avoiding unjustified sentencing disparities between similar defendants based on who the prosecutor, the defense attorney, and the judge happen to be. *Koon v. United States*, 518 U.S. 81, 113 (1996) ("The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice.").

Moreover, the guidelines are designed to account for not only what a particular defendant did on a particular date, but also for how often the defendant previously did such things.  Guideline sentencing, therefore, recognizes that what someone has repeatedly chosen to do in the past is a good indicator of what they will do in the future despite contemporary, and often recycled, claims to the contrary.  While we can all hope that someone will behave better next year than they did last year, hope detached from evidence is not a solid basis for varying below a guideline range.  This is particularly true in light of the fundamental obligation to impose a sentence that protects the public. 18 U.S.C. § 3553(a)(2)(C).

### III.  OFFENSE CONDUCT

Qureem Overton led a drug-trafficking organization that created a Philadelphia-to-Butler pipeline for the distribution of fentanyl, heroin, and cocaine.  Overton, who is from Philadelphia but resided in Butler for the last several years, not only orchestrated the supply of illegal drugs to Butler, he also orchestrated the distribution of those drugs in Butler by dealers from Philadelphia. Mr. Glenn was one of those dealers.

Between 2017 and 2020, the Pennsylvania State Police and the FBI completed controlled and undercover buys of fentanyl, heroin, acetyl fentanyl, cocaine, and crack cocaine from Overton and the dealers who worked for him, including from Mr. Glenn.  The buys from Mr. Glenn occurred inside or near the city limits of Butler.  At least 15 buys of fentanyl, heroin, acetyl fentanyl, powder cocaine, and crack cocaine were made from Mr. Glenn between November 2019 and June 2020.

Most of the buys were made by a state trooper acting in an undercover capacity.  The buys were often arranged through direct communication with Overton.  Overton would then send one of his dealers, most often Mr. Glenn, to complete the hand-to-hand transactions.  Several of the hand-to-hand transactions either originated or culminated within 1,000 feet of playgrounds and schools in Butler.

The Indictment charging Mr. Glenn was returned in June 2020.  The corresponding arrest warrant was served on Mr. Glenn on June 24.  On that date, he was arrested in Room 209 of the Holiday Inn Express in Butler.  Fentanyl, heroin, cocaine, and $7,482.00 of drug-trafficking proceeds were inside Room 209 at the time of his arrest.  He is responsible for the distribution of 32 grams of fentanyl, 80 grams of heroin, 8 grams of acetyl fentanyl, 100 grams of cocaine, and 22.4 grams of cocaine base in Butler in 2019 and 2020.

## IV.  CONCLUSION

While there are far too many drug dealers, there are not that many.  The great majority of our fellow citizens go to great lengths to keep themselves and their children away from the terrible effects of drug dealing and would never deal drugs regardless of their circumstances.  The fact that Mr. Glenn is one of far too many drug dealers does not justify a reduced sentence in this case:

> Intractability often suggests inevitability. So it is with illegal drugs. We seem resigned to the matter as to some low-grade national fever which we may never

wholly shake. Viewed in macro terms, that may be true. Viewed in broad societal terms, we may not be able to make much of a dent in the "drug problem." And yet viewed through the lens of a wrecked and shattered life, drugs are not an abstract "problem," but an all too concrete tragedy. Our court system, while hardly the whole answer, still brings to justice those who strip the lives of others of hope and potential and leave them to the toils of addiction.

*United States v. Gray*, 491 F.3d 138, 157 (4th Cir. 2007).

Mr. Glenn should receive a guideline-range sentence in this case. Recent research conducted by the United States Sentencing Commission supports the common-sense conclusion that longer prison sentences not only prevent more crimes prior to release, they deter more crimes after release. United States Sentencing Commission, "*Length of Incarceration and Recidivism,*" p. 4 (published April 2020) (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_RecidivismSent Length.pdf). The Sentencing Commission research "consistently found that incarceration lengths of more than 120 months had a deterrent effect." *Id*. Defendants incarcerated for more than 120 months are between 30 and 45 percent less likely to recidivate within 8 years of release. *Id*. Defendants incarcerated for more than 60 months were more likely to recidivate than defendants who received sentences of more than 120 months, but they were still 17 percent less likely to recidivate than defendants who received shorter sentences. *Id*.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/ Craig W. Haller
CRAIG W. HALLER
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 644-3500 (Phone)
craig.haller@usdoj.gov
PA ID No. 87714